UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| MARSHALL N. MCGAW,<br><br>    Plaintiff,<br><br>  v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration,<br><br>    Defendant. | CAUSE NO.: 1:23-CV-479-TLS-SLC |

## OPINION AND ORDER

The Plaintiff Marshall N. McGaw seeks review of the final decision of the Commissioner of the Social Security Administration denying his application for child disability benefits that he filed as an adult. For the reasons set forth below, the Court finds that reversal and remand for further proceedings is required.

**STANDARD FOR ADULT APPLICANTS FOR CHILD DISABILITY BENEFITS**

The primary purpose of the child disability benefits provisions of the Social Security Act (the Act) "is to provide support for dependents of a disabled wage earner." *Jimenez v. Weinberger*, 417 U.S. 628, 634 (1974). For an adult applicant, such as the Plaintiff here, to be eligible for a period of child disability benefits, he must establish that he is: (1) unmarried; (2) the child of a person insured under the Act who either has died or is entitled to disability benefits under the Act; (3) financially dependent on that insured person at the time the person died or became eligible for benefits; and (4) "under a disability . . . which began before he attained the age of 22." 42 U.S.C. §§ 402(d), (d)(1)(B), (d)(1)(C); *see also* 20 C.F.R. § 404.350(a). In this case, the parties do not dispute elements one, two, or three.

As for element four, for purposes of the Act, a disability is defined as an "inability to engage in any substantial gainful activity by reason of" an impairment. 42 U.S.C. § 423(d)(1)(A). If an applicant engaged in substantial gainful activity at any time after reaching the age of 22, the Commissioner will find that he is not disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(i), 404.1571. Thus, to establish eligibility for child disability benefits, "[a]n adult applicant must also show that he . . . had a disability that *continued* unabated from before the applicant's 22nd birthday to the time of the filing of the application." *Hess v. O'Malley*, 92 F.4th 671, 677 (7th Cir. 2024) (emphasis added).

## PROCEDURAL BACKGROUND

On March 12, 2020, the Plaintiff filed an application for child disability insurance benefits, alleging disability beginning at his birth in January 1952. AR 159–60, ECF No. 8. After the claims were denied initially and on reconsideration, the Plaintiff requested a hearing, which was held before the ALJ on September 30, 2021. AR 26, 120. On August 2, 2022, the ALJ issued a written decision, finding that the Plaintiff had engaged in substantial gainful activity after his 22nd birthday. AR 10–22. The Plaintiff sought review of the ALJ's decision by the Appeals Council, and the Appeals Council subsequently denied review. AR 1–7. Thus, the ALJ's decision is the final decision of the Commissioner. *Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019). The Plaintiff now seeks judicial review under 42 U.S.C. § 405(g). On November 15, 2023, the Plaintiff filed his Amended Complaint [ECF No. 4] in this Court, seeking reversal of the Commissioner's final decision. The Plaintiff filed an opening brief, the Commissioner filed a response brief, and the Plaintiff filed a reply brief. ECF Nos. 12, 18, 21.

**THE ALJ'S DECISION**

An ALJ conducts a five-step inquiry to determine whether an adult claimant qualifies for disabled child benefits. *See* 20 C.F.R. § 404.1520(a)(2) ("These rules apply to you if you file an application for a period of disability or disability insurance benefits (or both) or for child's insurance benefits based on disability."); *see also Segerstrom v. Berryhill*, No. 16 C 10164, 2017 WL 6733719, at *1 n.2 (N.D. Ill. Dec. 19, 2017) ("The five-step sequential evaluation process applies to applications for childhood disability benefits under Title II."). In this case, the only relevant step is the first step, at which the Plaintiff has the burden to establish that he has not engaged in substantial gainful activity at any time after reaching the age of 22. *See* 20 C.F.R. § 404.1520(a)(4)(i). Here, the ALJ found that the Plaintiff had engaged in substantial gainful activity between reaching the age of 22 and applying for child disability benefits. AR 18–20. Thus, the ALJ's analysis ended at the first step. AR 20.

**STANDARD OF REVIEW**

The Social Security Act authorizes judicial review of the agency's final decision. 42 U.S.C. § 405(g). On review, a court considers whether the ALJ applied the correct legal standard and whether the decision is supported by substantial evidence. *See Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017); 42 U.S.C. § 405(g). A court will affirm the Commissioner's findings of fact and denial of disability benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (citations omitted). Even if "reasonable minds could differ" about the disability status of the claimant, the court must affirm the Commissioner's decision if it

is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (quoting *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007)).

The court considers the entire administrative record but does not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [the court's] own judgment for that of the Commissioner." *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011) (quoting *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). Nevertheless, the court conducts a "critical review of the evidence," and "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Lopez*, 336 F.3d at 539 (citations omitted); *see also Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014) ("A decision that lacks adequate discussion of the issues will be remanded."). The ALJ is not required to address every piece of evidence or testimony presented, but the ALJ "has a basic obligation to develop a full and fair record and must build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014) cleaned up). However, "if the Commissioner commits an error of law," remand is warranted "without regard to the volume of evidence in support of the factual findings." *White ex rel. Smith v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

## ANALYSIS

The Plaintiff argues that the ALJ made several errors of law in finding that he engaged in substantial gainful activity after his 22nd birthday. The Court finds that remand is required for the ALJ to consider whether, under 20 C.F.R. § 404.1573(c), the Plaintiff can rebut the presumption that he engaged in substantial activity created by his earnings by showing that he

lacked the ability to perform work at the substantial gainful activity level because his work was performed under special conditions.

In this case, the Plaintiff filed his application for child disability benefits as an adult. Because he applied for benefits after his 22nd birthday, he must prove that his disability has been continuous since then. *See Hess*, 92 F.4th at 677. If he engaged in substantial gainful activity at any time after reaching the age of 22, the ALJ will find that his disability was not continuous. *See* 20 C.F.R. §§ 404.1520(a)(4)(i), 404.1571.

The Plaintiff argues that the ALJ's consideration of the evidence of his work at the YMCA in 1978 and 1979 as substantial gainful activity requires reversal. Specifically, he faults the ALJ for essentially only evaluating whether he engaged in substantial gainful activity under the subsidy framework but not under the five factors provided in 20 C.F.R. § 404.1573(a)–(e), particularly if his work was done under special conditions under 20 C.F.R. § 404.1573(c). For the reasons set forth below, the Court finds the Plaintiff's argument persuasive.

Section 404.1574 provides guidance on evaluating whether a claimant is engaged in substantial gainful activity based on average monthly earnings. *See id.* § 404.1574. For example, "in evaluating [the claimant's] work activity for substantial gainful activity purposes, [the ALJ's] primary consideration will be the earnings [he] derive[s] from the work activity." *Id.* § 404.1574(a)(1). "Generally, if [the claimant] worked for substantial earnings, [the ALJ] will find that [he] [is] able to do substantial gainful activity." *Id.* Although here the ALJ did not cite § 404.1574 in her decision, it appears that she analyzed whether the Plaintiff engaged in substantial gainful activity at the YMCA under that provision.

For the determination of whether earnings show substantial gainful activity, the part of the regulations relevant to the instant case specifies that

5

> [the ALJ] will consider that [the claimant's] earnings from [his] work activity as an employee (including earnings from work in a sheltered workshop or a comparable facility especially set up for severely impaired persons) show that [he] engaged in substantial gainful activity if . . . [b]efore January 1, 2001, they averaged more than the amount(s) in Table 1 of this section for the time(s) in which you worked.

*Id*. § 404.1574(b)(2), (b)(2)(i). Table 1 shows that if the claimant's monthly earnings from his work activity as an employee averaged more than $260 per month in 1978 or more than $280 per month in 1979, this "show[s] that [he] engaged in substantial gainful activity." *Id*. § 404.1574(b)(2), (b)(2)(i).

In this case, the record shows—and the parties do not dispute—that while employed by the YMCA in 1978 the Plaintiff earned $3,381.37 ($281.78 per month on average) and in 1979 he earned $7,696.40 ($641.37 per month on average). AR 176. These earnings are above the minimums provided in Table 1 of the regulations. *See* 20 C.F.R. § 404.1574(b)(2)(i). Correspondingly, the ALJ determined, "[T]he claimant's earnings exceeded the 1978 . . . and the 1979 monthly substantial gainful activity amount[s] . . . ." AR 18.

Even so, evidence of earnings over the Table 1 minimums is not dispositive. *See Cardew v. Comm'r of Soc. Sec.*, 896 F.3d 742, 747 (6th Cir. 2018) (citing *Keyes v. Sullivan*, 894 F.2d 1053, 1056 (9th Cir. 1990)). Instead, a presumption arises that the claimant has engaged in substantial gainful activity. *See Wolfe v. Shalala*, 997 F.2d 321, 324 (7th Cir. 1993) ("A claimant may be presumed to have been engaged in 'substantial gainful activity' based on his earnings." (citations omitted)). "The claimant may rebut a presumption based on earnings with evidence of his inability to perform the job well or without special assistance, among other considerations and special conditions." *Cardew*, 896 F.3d at 747 (cleaned up).

One specific way to rebut is "[i]f [a claimant's] earnings are being subsidized, [because] [the ALJ] [does] not consider the amount of the subsidy when . . . determin[ing] if [his] earnings

6

show that [he] [has] done substantial gainful activity." *Id*. § 404.1574(a)(2). Under agency policy, when considering whether a claimant's work is subsidized, the ALJ considers if (1) there are circumstances indicating a strong possibility of subsidy; (2) the employer calculates a subsidy; (3) the employer furnished a nonspecific subsidy; and (4) the employer and/or other organizations provided special conditions. POMS DI 10505.010(A).[1] "Thus, "[these] regulations provide a framework to subtract subsidized earnings . . . from gross earnings." *Cardew*, 896 F.3d at 747. This is referred to as "the subsidy framework." *Id.* at 748.

In this case, the ALJ recounted some of the Plaintiff's statements from his affidavit by saying,

> While working for the City of Fort Wayne [YMCA], his ". . . only duty at this job was to assist members to store their belongings. I would have to take belongings, such as purses and backpacks, which were placed in a numbered basket and store them behind the counter. There were times when items were too heavy or bulky, and I would have to ask for assistance. My helper could do the same tasks at least twice as fast as I could. I would have to ask for assistance several times per day. I can't remember the amount that I could lift back then." Additionally, the claimant reported there were ". . . one or two weeks total when the Y was closed to the public that I assisted with cleaning the building."

AR 18–19 (citing AR 227). Citing circumstances highlighted under agency policy in POMS DI 10505.010, the ALJ found "a marked discrepancy between the amount of pay and the value of the services; the employee alleges the employee does not fully earn his pay (e.g., the employee receives unusual help from others in doing work); and the employee is involved in a government-sponsored job training and employment program," concluding that "[the Plaintiff's] statements appear consistent with some of [these] circumstances." AR 19. However, the ALJ ultimately did not find the Plaintiff's statements convincing based on other evidence—including the absence of confirming evidence, the absence of an employer-calculated subsidy, the

---

[1] The Social Security Administration's Program Operations Manual System (POMS) can be found at https://secure.ssa.gov/apps10/poms.nsf/partlist!OpenView (last visited December 9, 2024).

7

Plaintiff's mother not listing him as a disabled child in her application for retirement benefits, and finding the expert opinion of Stuart Gilkison unpersuasive. AR 18–20. Thus, the Court finds that the ALJ applied the subsidy framework in her decision.

Additionally, "[t]he presumption may be rebutted based on the claimant's performance, or the special conditions attached to his work, where the subsidy . . . framework does not adequately account for these factors." *Cardew*, 896 F.3d at 748 (cleaned up). As pointed out by the Plaintiff, this involves showing one or more of the following five factors under § 1573: (a) the nature of the claimant's work; (b) how well the claimant performs; (c) if the claimant's work was done under special conditions; (d) if the claimant was self-employed; or (e) time the claimant spent in work. 20 C.F.R. § 404.1573(a)–(e). Under § 1573(c), as is most relevant here, if a claimant shows that his "work is done under special conditions, [the ALJ] may find that it does not show that [the claimant] [has] the ability to do substantial gainful activity." *Id.* § 404.1573(c).[2]

> Examples of special conditions include:
>
> (1) [the claimant] required and received special assistance from other employees in performing [his] work;
>
> (2) [the claimant] [was] allowed to work irregular hours or take frequent rest periods;
>
> (3) [the claimant] [was] provided with special equipment or [was] assigned work especially suited to [his] impairment;
>
> (4) [the claimant] [was] able to work only because of specially arranged circumstances, for example, other persons helped [him] prepare for or get to and from [his] work;
>
> (5) [the claimant] [was] permitted to work at a lower standard of productivity or efficiency than other employees; or

---

[2] "However, work done under special conditions may show that [the claimant] [has] the necessary skills and ability to work at the substantial gainful activity level." 20 C.F.R. § 404.1573(c).

8

>
> (6) [the claimant] [was] given the opportunity to work despite [his] impairment because of family relationship, past association with [his] employer, or [his] employer's concern for [his] welfare.

*Id*. § 404.1573(c)(1)–(6).

Here, although it is possible that the ALJ considered whether the record contained these examples or other relevant special conditions beyond the subsidy framework, her decision gives no indication that she did so. For example, the ALJ did not address the following evidence: (1) statements by the Plaintiff in the Work Activity Report indicating that he was given a device to grip, was using a cane, and only did jobs that allowed sitting; (2) the testimony of vocational expert William Kiper that the Plaintiff's employment at the YMCA "sounds to me like a job that was devised for someone," and that he could not come up with a job in competitive employment for someone, such as the Plaintiff, who uses a cane and cannot use their hands; and (3) statements by the Plaintiff's neurologist, Dr. Joe Ottinger (a) on June 29, 1995 that, if the Plaintiff does not have a home health aide he will likely have to go to a nursing home, (b) on August 30, 1995 that his impairments are long-standing and he is not able to maintain any kind of gainful employment, and (c) on December 4, 1997 that he has cerebral palsy with a dystonic top form that makes it difficult for him to get around and that he has always shown dystonic posturing. *See* AR 43, 47, 194, 269, 270, 275. Instead, the ALJ appears to have conducted an analysis under the subsidy framework of § 1574, finding that the Plaintiff's earnings from the YMCA exceeded 1978 and 1979 substantial gainful activity levels, and then considered whether his work was subsidized and concluded it was not without indicating whether she conducted an analysis under § 1573.

In the ALJ's determination, she must "consider all of the medical and vocational evidence in [the] file to decide whether or not [the claimant] [has] the ability to engage in

9

substantial gainful activity. 20 C.F.R. § 404.1571. This is because "[w]hether the claimant's work history demonstrates his ability to engage in substantial gainful activity requires a holistic analysis of a variety of factors, guided but not dictated solely by income in all cases, and tailored to the medical and vocational evidence in an individual claimant's case." *Cardew*, 896 F.3d at 748; *see also Moore*, 743 F.3d at 1121. Thus, the ALJ here erroneously believed she had completed her analysis under the subsidy framework when she ignored whether there were special conditions or other circumstances that precluded an actual ability by the Plaintiff to work at the substantial gainful activity level as set forth in § 1573. *See Mason v. SSA*, No. 1:21-CV-616, 2022 WL 3152230, at *6 (W.D. Mich. Aug. 8, 2022).

Accordingly, the Court concludes that "remand is appropriate for the ALJ to consider whether Plaintiff can rebut the presumption that [his] earnings created by showing that [he] lacks the ability to perform work at the SGA level because [his] work . . . was performed under 'special conditions.'" *Id.* Because it appears that the Plaintiff waited to apply for child disability benefits until after he was awarded retirement benefits in 2017, the ALJ should also consider whether there is a procedural bar based on the time to appeal his award for retirement benefits.[3]

## CONCLUSION

For the reasons stated above, the Court GRANTS the relief sought in the Plaintiff's Brief [ECF No. 12] and REVERSES the decision of the Commissioner. The Court REMANDS this matter for further proceedings consistent with this Opinion.

SO ORDERED on December 16, 2024.

s/ Theresa L. Springmann<br>
JUDGE THERESA L. SPRINGMANN<br>
UNITED STATES DISTRICT COURT

---

[3] Although the Defendant raised this procedural bar argument in the response brief, because the ALJ did not address this issue in her decision and the Defendant did not provide the pertinent legal authority, the Court declines to address the argument any further.